AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED BY __JM__ D.C.

AUG 28 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

| | |
|---|---|
| United States of America<br>v.<br><br>ANTHONY BENYARD<br><br>*Defendant(s)* | )<br>)<br>) Case No. 19-8362-BER<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 27, 2018__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1). | Possession with intent to distribute a controlled substance, namely a mixture or substance containing a detectable amount of fentanyl. |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Charles Cerami, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/19

_____
*Judge's signature*

City and state: West Palm Beach, FL

BRUCE E. REINHART, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Charles Cerami, a Task Force Officer with the United States Drug Enforcement Administration (DEA), United States Department of Justice, having been duly sworn, do hereby depose and state as follows:

## BACKGROUND OF THE AFFIANT

1. I am a deputized Task Force Officer (TFO) with the DEA and have been since May of 2017. As such, I am a "law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have received training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, transportation and importation of controlled substances, as well as, methods used to finance drug transactions and launder drug proceeds.

2. Prior to my assignment with the DEA, and since March 2009, I have been employed as police officer with the Boca Raton Police Services Department (BRPD). Over the course of my career, I have served in the roles of road patrol, tactical patrol officer, and as a detective with the Vice, Intelligence, and Narcotics Unit. I have conducted numerous investigations into the possession, sale, delivery, and trafficking of illegal narcotics and other controlled substances. I have acted in an undercover capacity to purchase narcotics from street-level dealers, conducted physical and wire surveillance and executed numerous arrest and search warrants.

## PURPOSE OF THIS AFFIDAVIT

3. The information in this affidavit is based on my own personal knowledge, as well as, information imparted to me from other law enforcement officers and agents. The limited purpose of this affidavit is to establish that probable cause exists for the arrest of Anthony Cornelius BENYARD for having committed the criminal offense of Distribution of a Controlled Substance, namely a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(a)(1). Accordingly, this affidavit does not set forth every fact that is known to me, or other officers, regarding Anthony Cornelius BENYARD, but only those necessary to establish probable cause for his arrest.

## BACKGROUND OF THE INVESTIGATION

4. In or about July of 2019, agents from the DEA and the Palm Beach County Sheriff's Office (PBSO) initiated an investigation into the drug trafficking activities of Anthony Cornelius BENYARD (BENYARD). Agents received information from a DEA Confidential Source, hereinafter referred to as CS, about a drug dealer selling large amounts of heroin within the West Palm Beach area. The CS reported the drug dealer was utilizing the telephone number (561) 567-3761 to facilitate drug transactions. The CS described the drug dealer as a black male, approximately 40 years of age, medium build with gold teeth. Agents were able to identity this individual as BENYARD. This was later confirmed by the CS after being shown multiple photographs of BENYARD from the Florida driver's license database and a Facebook account under the handle "Anthony Benyard."

5. On July 18th, 2019, Agents conducted an operation wherein the CS conducted a controlled purchase of heroin from BENYARD. On this date, and in the presence of Agents, the CS placed a controlled phone call to the telephone number (561) 567-3761 and spoke with BENYARD. During the conversation, the CS requested to purchase $200 worth of heroin and was

told by BENYARD he would supply the heroin. The CS was instructed to place a follow up phone call once in the area of Interstate 95 and Palm Beach Lakes Boulevard, West Palm Beach, Florida. Agents then provided the CS with $200 of prerecorded U.S. currency, which was derived investigative funds. Agents also searched the CS and did not find any money, contraband, controlled substances, or weapons on his/her person.

6. At approximately 4:30 PM, Agents audibly listened as the CS placed a phone call to BENYARD as he/she arrived in the area of Interstate 95 and Palm Beach Lakes Boulevard. During this conversation the CS was instructed to meet at the Valero Gas Station located at 1250 Palm Beach Lakes Boulevard, West Palm Beach, FL. At approximately 4:40 PM, the CS arrived at the station. At approximately 4:42 PM, a silver Dodge Magnum, bearing temporary license CLE7816, arrived at the Valero Gas Station and parked directly next to the CS. At this time, Agents observed the CS enter the front passenger seat of the Magnum. Moments later, the CS exited and drove away from the meeting location.

7. Surveillance was maintained on the Dodge Magnum as it relocated to the parking lot of Sklliz Arcade located at 1252 Palm Beach Lakes Boulevard, West Palm Beach, Florida. Agents then viewed BENYARD exit the front driver's seat of the Magnum. BENYARD was the sole occupant of the vehicle. Surveillance was then terminated.

8. Following the narcotics transaction, the CS was followed by Agents. Immediately upon meeting with the CS, the CS provided Agents with a clear bag containing a brown grainy substance which appeared to be heroin. The CS advised that BENYARD was in fact driving the silver Dodge Magnum, was the sole occupant and sold him/her the suspected heroin. Agents again searched the CS and did not find any money, contraband, controlled substances, or weapons on

his/her person. Agents weighed the suspected heroin which yielded 3.5 grams. The suspected heroin was processed and submitted into PBSO drug evidence per PBSO's policy and procedure.

9. On August 2, 2019, Agents conducted an operation wherein the CS and an Undercover Agent, hereinafter referred to as UC, conducted a controlled purchase of heroin from BENYARD. On this date, at approximately 1:35 P.M., Agents met with the CS. Agents searched the CS for contraband and money with none being found. Agents then directed the CS to call BENYARD via telephone number (561) 567-3761 to inform him that the CS was ready to purchase one ounce of heroin. During this conversation, BENYARD agreed and told the CS he was busy but would available to meet at 2:00 p.m. In response, the UC was provided with $2,200 in investigative funds.

10. At approximately 2:20 P.M., the CS received a telephone call from BENYARD. BENYARD instructed the CS to meet him at Budget Rental located at 2005 Belvedere Road, West Palm Beach, Florida. The UC then drove the CS to the Budget Rental.

11. At approximately 2:27 P.M., the CS called BENYARD to advise the UC and CS were in the area of the Budget Rental. BENYARD then told the CS to meet him at the Wawa store located at 1520 Belvedere Road, West Palm Beach, Florida. Several minutes later, Agents observed BENYARD standing next to a silver Chevrolet Tahoe, bearing Florida license plate AVAV84, parked next to a fuel pump at the Wawa station.

12. At approximately 2:41 p.m., the UC and CS arrived at the Wawa station. Agents observed the CS met with BENYARD. The CS and BENYARD remained outside the Chevrolet Tahoe in view of Agents. Several minutes later the CS walked away and the UC approached and met with BENYARD inside of the silver Chevrolet. After several minutes the UC exited

BENYARD's vehicle and returned to the UC vehicle. The UC and CS then departed the area. Agents then observed BENYARD leave the Wawa. Surveillance was later terminated.

13. After the operation, the UC advised while inside the Tahoe, BENYARD provided the UC with suspected heroin. In exchange, the UC provided BENYARD with $2,200.00 in investigative funds. The vehicle was also occupied by an additional unknown black male. Agent then weighed the suspected heroin which yielded 28.8 grams. Agents field tested the substance which yielded a positive result for heroin. Agents then submitted the suspected heroin into PBSO evidence per PBSO policy and procedure. Telephone calls made by the CS were made in the presence of agents and were digitally recorded. These recording were placed into PBSO evidence. The UC was also equipped with a covert audio/video recording device. The UC downloaded the recordings from this device and submitted them into PBSO evidence.

14. On August 9, 2019, Agents conducted an operation wherein the UC, conducted a controlled purchase of heroin from BENYARD. On this date, at approximately 12:04 p.m., the UC received a telephone call from BENYARD from phone number (561) 567-3761. During the conversation, the UC told BENYARD he/she (UC) was looking to purchase heroin for $2,200.00. During a subsequent conversation, BENYARD instructed the UC to meet at Family Dollar located at 4935 Southern Boulevard, West Palm Beach, Florida.

15. At approximately 1:50 p.m., Agents observed the UC make contact with BENYARD who was in a silver Lincoln SUV bearing Florida tag LCZV04. Agents observed the UC enter BENYARD'S vehicle through the front passenger door. After several minutes, Agents observed the UC exit BENYARD's vehicle, return to the UC vehicle and departed this area.

16. After the operation, the UC advised while inside the vehicle, BENYARD provided the UC with suspected heroin. In exchange, the UC provided BENYARD with $2,200.00 in investigative funds. The UC advised BENYARD was the sole occupant of the vehicle.

17. Agents field tested the suspected heroin following the transaction which yielded a positive result. Agents also weighed the suspected heroin which yielded approximately 29.6 grams. Agents submitted the suspected heroin into PBSO evidence per PBSO policy and procedures. All telephone calls and text messages made by the UC were digitally recorded and were placed into evidence per PBSO policy and procedures. The UC was also equipped with a covert audio/video recording device. The UC downloaded the recordings from this device and submitted them into PBSO evidence.

18. On August 27, 2019, Agents conducted an operation wherein BENYARD was taken into custody for active State of Florida warrants for Fleeing and Eluding Law Enforcement and probable cause for the above drug trafficking offences. Beginning at approximately 09:30 a.m., Agents were able to locate BENYARD in the address of 985 Manor Drive, Palm Springs, Florida. Agents were able to view BENYARD wearing a red shirt and red baseball hat. A short time later, Agents observed BENYARD enter the driver's seat of the silver Dodge Magnum. Two (2) other males also entered the passenger compartment as the vehicle departed the residence.

19. Agents then conducted surveillance on the Dodge Magnum. During the surveillance, Agents observed the vehicle travel to locations where other individuals would approach the vehicle. These individual would meet with the occupants of the Magnum and then depart the area. This short term traffic was indicative of street level drug transactions based on the totality of the investigation and my training and experience. During this period of surveillance,

Agents also observed the Magnum drop off one of its passengers at St. Mary's Medical Center located at 901 45th Street, West Palm Beach, Florida.

20. At approximately 11:28 a.m., Agents observed BENYARD arrive in the parking lot of Sklliz Arcade located at 1252 Palm Beach Lakes Boulevard, in the City of West Palm Beach. After meeting with several other individuals in a similar fashion outlined above, BENYARD and the remaining unknown male passenger of the Dodge Magnum exited the vehicle and entered the above establishment.

21. A short time later, a black male exited Sklliz Arcade and attempted to enter the Dodge Magnum. At this point, Agents made contact that individual and also entered the above establishment. While inside, Agents made contact with BENYARD and attempted to take him into custody. BENYARD immediately began to resist arrest. Agents used appropriate force to take BENYARD into custody.

22. While on scene and subsequent to BENYARD's arrest, I located a clear baggie and $566.00 in United States Currency in his front left pocket. The clear baggie contained four (4) individually packaged bags of a white/ pink substance identified as Fentanyl weighing 25.5 grams, three (3) individually packaged bags of a white substance identified as cocaine and crack cocaine weighing 14.1 grams, one (1) bag and eight (8) capsules of a brown/ white substance identified as heroin weighing 9 grams, one bag containing thirteen (13) round blue pills (marked A215) and another bag with 32.5 round white pills (marked M522 & M523). Both were identified through the Internet website Drugs.com as Oxycodone; a total weight of 21.5 grams. Based on my training and experience, the manner in which these drugs were packaged, the defendant's prior sales to the UC, and my personal observations of the defendant on this day, I believe that that defendant possessed these drugs with the intent to distribute them.

23. Once into custody, BENYARD was provided medical attention and was later transported to St. Mary's Hospital for clearance. Once medically cleared, BENYARD was booked into the Palm Beach County Main Jail.

24. As Agents prepared to tow the Dodge Magnum, an inventory of its contents was conducted. During the inventory, Agents located a loaded Glock 19 9mm handgun, bearing serial number BBFH121, in the center console. The above drugs were weighed and field tested before being placed in PBSO evidence per PBSO policy and procedure. The handgun was also placed into PBSO evidence per policy and procedure.

## CONCLUSION

25. Therefore, based on the facts and information set forth in this affidavit, I respectfully submit that there is probable cause to believe that on August 27, 2019, BENYARD did commit the criminal offense of possession with intent to distribute a controlled substance, namely a mixture or substance containing a detectable amount of fentanyl, also in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER YOUR AFFIANT SAITH NAUGHT.

_____
CHARLES CERAMI
TASK FORCE OFFICER
U.S. DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 28 day of August, 2019, in West Palm Beach, Florida.

_____
THE HONORABLE BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>ANTHONY BENYARD</u>
**Case No**:

Count #: 1

<u>Possession with intent to distribute a controlled substance, namely a mixture or substance containing a detectable amount of fentanyl</u>

<u>Title 21 U.S.C. § 841(a)(1)</u>

\* **Max.Penalty**: up to 20 years of imprisonment; 3 years to life of supervised release; and $1,000,000 fine.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-8362-BER

UNITED STATES OF AMERICA

v.

ANTHONY BENYARD

Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?    ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   ___ Yes  ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: *Stephanie Evans*
STEPHANIE EVANS
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.   0255180
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:    (561)-820-8711
Fax:    (561)805-9846
Email:  Stephanie.D.Evans@usdoj.gov